United States District Court
Middle District of Florida
Tampa Division

**JAMES LONG ON BEHALF OF**
**ROBERT LONG (DECEASED),**

    *Plaintiff,*

v.                                                 NO. 8:20-cv-1949-PDB

**ACTING COMMISSIONER OF SOCIAL**
**SECURITY,**

    *Defendant.*

___

# Order

The plaintiff, on behalf of his late spouse Robert Long, brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to challenge the Acting Commissioner of Social Security's final decision denying Long's applications for disability insurance benefits and supplemental security income. Docs. 1, 1-1. The procedural history and medical evidence are summarized in the briefs and not fully repeated here. *See* Docs. 30, 37.

## I.  Administrative Record

In his applications, Long alleged he had become unable to work on May 21, 2015, because of anemia, cellulitis, dyspnea, headaches, hemochromatosis, lupus, sinusitis, angina pectoris, chronic diarrhea, chronic fatigue, rheumatoid arthritis, autoimmune deficiency syndrome, congestive heart failure, irritable bowel syndrome, methicillin-resistant staphylococcus aureus, pain in his extremities, decreased vision in his left eye, and eye burning and pain. Tr. 124, 140, 346, 420, 457.

Following denial of his applications at the initial level, Long proceeded to the reconsideration level. Tr. 219–39. There, his primary impairment was described as "HIV" and found "severe," and the listing for human immunodeficiency virus (14.08) was considered. Tr. 193, 205, 207. "Claimant-supplied [i]nformation" was summarized as "[t]hrobbing pain in upper & lower extremities, cellulitis, sinusitis, irritable bowel syndrome, chronic diarrhea, eyes burn and hurt constantly." Tr. 185, 199. Based on evidence predating February 2016, state agency consultant Edmund Molis, M.D., opined Long could perform light work and stand, walk, or sit with normal breaks for a total of about six hours in an eight-hour workday. Tr. 194, 208.

In a subsequent letter dated August 10, 2017, Sage Naran, M.D., stated, "Please excuse Mr. Long from jury duty due [to] his medical conditions. He is on medications that do not allow him to sit for extended periods of time without having to use the restroom." Tr. 1010. Asked whether the "hardship" is "permanent" or "temporary," Dr. Naran marked permanent. Tr. 1010.

In a letter dated November 13, 2017, the plaintiff explained he had been with Long since 2010 and had watched Long's quality of life slowly deteriorate over the last three years. Tr. 1490. The plaintiff described Long's symptoms, including struggling to eat full meals "without having to spend a great deal of time in the restroom." Tr. 1490. He added, "Travel is out of the question due to the numbness issues he has, let alone trying to make sure that a restroom is available if needed." Tr. 1490.

Following denial of his applications at the reconsideration level, Long proceeded to a hearing before an administrative law judge (ALJ), conducted on January 5, 2018. Tr. 122–55, 230, 235. At the hearing, a representative for Long explained "the main diagnosis … is hemochromatosis" and the "majority of the symptoms in his treatment [stem] from this condition, including"

2

cirrhosis of the liver, chronic fatigue, and rheumatoid arthritis. Tr. 128–29. The representative stated, "It's our understanding that the hemochromatosis is [an] extremely rare condition." Tr. 130. The representative explained, "[Long] is having problems with gastrointestinal issues. He has seen four gastroenterologists to get to the point where he is today, with a possible liver transplant." Tr. 128. The representative stated Long is seeing a new gastroenterologist and has been referred to a transplant team at Tampa General Hospital for a possible liver transplant. Tr. 126.

Long testified as follows. He is married, lives with family, and has no minor children. Tr. 136. In 2014, he began "getting shortness of breath" and exhaustion sometimes to the point of not even wanting to shower. Tr. 139. He visited a doctor and underwent "a lot of testing," and the doctor put him on a diet to reduce iron intake and instructed him to cease using a cast-iron skillet. Tr. 139. Afterward, he felt no better and in fact felt worse, so he visited a cardiologist, who informed him he had excess fluid near his heart and put him on Lasix. Tr. 139. He took Lasix until he saw another doctor, who instructed him to cease taking Lasix because of jaundice. Tr. 129, 139–40. Following a change in his insurance, he visited another doctor, and the doctor asked why he had not visited "a hematolog[ist] in oncology." Tr. 140.

As Long was recounting his medical history, the ALJ stopped him and asked him to provide "a list of his symptoms," adding, "This is a case that I'm gonna be referring to a medical specialist," and, "This is not … the kind of decision that lawyers can decide. There's just too much going on here." Tr. 140.

Long additionally testified as follows. His "major" symptom is chronic fatigue. Tr. 140. He has shortness of breath when walking up stairs and even when taking a shower. Tr. 140, 143. He has joint pain all over, and arthritis limits his ability to type and write. Tr. 129, 143. He has difficulty picking up a

3

gallon of milk because he uses his right hand and his right thumb is constantly in pain. Tr. 145. He takes lactulose three times daily, Tr. 134, which causes gastrointestinal issues, Tr. 140. He elaborated, "When I dose three times a day, I'm in the bathroom sometimes up to two hours and I have to take the medication three times a day. So, I spend [an] incredible amount of time in the bathroom." Tr. 141. The gastrointestinal issues cause no pain; "It's just going to the restroom. I can't keep any fluid in my body." Tr. 141–42. Still, he has severe abdominal pain and is allergic to medication, which causes nausea. Tr. 143. He is "very bloated" and "very swollen" in his abdomen area. Tr. 143.

Long testified that as far as daily activities, he takes a shower if he has the strength, which is most days, and sometimes needs help getting dressed. Tr. 145–46. He testified he has a driver's license but cannot drive because, as a result of lingering left-sided weakness, he can neither hold the steering wheel with both hands nor use his left foot to brake. Tr. 136–37.

At the end of the hearing, the ALJ stated, "This is a case that's gonna be decided on the medical evidence and so we're going to leave the record open." Tr. 153. The ALJ suggested getting updated records from particular doctors, adding, "[B]ut I'm … probably going to refer this to a specialist for review of the file once everything's in." Tr. 154. The ALJ asked Long's representative what specialty is involved, and the representative responded, "I was just going to ask you." Tr. 154. When the representative suggested having Long ask his physician, the ALJ responded, "I don't want to mislead you. I'm not interested in, in your physicians trying to tell me what your residual functional capacity [(RFC)] is. I'm interested in additional [treatment] records … and then I'll let … an independent ME [(medical expert)] decide where we are." Tr. 154.

Seven months later, on August 24, 2018, the ALJ entered the decision under review. Tr. 82–96. In the decision, the ALJ explained he was admitting

evidence Long provided after the hearing. Tr. 82, 126–27. The ALJ neither used an ME nor explained why he ultimately decided against using an ME.

The ALJ found Long had severe impairments of hemochromatosis, obesity, cirrhosis of the liver, and rheumatoid arthritis with joint pain. Tr. 85. The ALJ found Long had non-severe impairments of "hyperlipidemia, headaches, cholecystitis status post cholecystectomy … , and history of malignant neoplasm of the thyroid" finding the "conditions appear to be well controlled[.]" Tr. 85. The ALJ also found Long had non-severe impairments of depression and anxiety, finding the conditions caused no more than a minimal limitation in his ability to perform basic mental work activities. Tr. 86. The ALJ found Long failed to adequately support his allegations that he had autoimmune deficiency syndrome, lupus, and congestive heart failure, finding no medical records substantiated their existence. Tr. 85–86. The ALJ found Long had no condition or combination of conditions that met or medically equaled the severity of a listed impairment in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 87. The ALJ explicitly considered listing 5.05 (chronic liver disease), listing 14.09 (inflammatory arthritis), and Long's obesity. Tr. 87–90.

The ALJ found Long had the RFC to perform light work with additional limitations:

> [T]he claimant can stand and walk for up to 6 hours; sit for up to six hours in an eight hour workday with normal breaks, but any continuous standing and walking should be limited to 20 minutes with an option to sit for five minutes; no more than occasional operation of foot controls; avoid climbing ladders, ropes, and scaffolds; occasional navigation of ramps and a set of stairs; occasional balancing, stooping, kneeling, and crouching; should avoid crawling; frequent reaching bilaterally, including overhead, but should avoid constant or repetitive lifting, carrying, or handling; should avoid concentrated exposure to extreme cold, extreme heat, and excessive vibration; should avoid all industrial hazards; and no more than occasional fingering with the dominant left hand.

Tr. 90.

> The ALJ summarized Long's testimony and other statements:
>
> As a result of his symptoms, [Long] testified that he experiences shortness of breath with over-exertion, climbing stairs, and even at times when taking a shower. He testified that he has left side weakness and that, at times, he has difficulty walking on a flat surface. He testified that he has difficulty writing and typing because of arthritis in his hands. [Long] testified that he has difficulty picking up a gallon of milk. With respect to his daily activities, [Long] testified that he tries to shower every day, but that sometimes he needs assistance with showering due to pain and left-side weakness.
>
> I have read and considered [Long]'s statements in the record regarding his pain, limitations, and activities of daily living (Exhibits 1E; 14E; 18E). [Long]'s statements are of the same general nature as the subjective complaints from [Long]'s testimony. He explains that because of his impairments he has difficulty lifting, carrying, standing, and walking (Exhibit 1E). [Long] further reported that he experiences confusion, memory loss, and difficulty sleeping (Exhibits 1E; 14E). He reported that he is unable to do housecleaning, yard work, home maintenance, drive a car, shop alone, or engage in social activities (*Id.*). He reported that he has difficulty cooking meals and independently caring for his personal needs (Exhibit 1E/2).

Tr. 91.

The ALJ then stated, "In contrast, the objective medical evidence of record fails to provide support for [Long]'s allegations of disabling symptoms and limitations. More specifically, the medical findings do not support the existence of limitations greater than those in the [RFC.]" Tr. 91. The ALJ continued:

> Despite [Long]'s allegations of disabling chest pain, joint pain, severe fatigue, shortness of breath, abdominal pain, and chronic diarrhea, diagnostic testing of record has revealed relatively mild to moderate findings. For example, an echocardiogram performed on August 3, 2015 revealed trace mitral regurgitation, mild tricuspid regurgitation, decreased compliance of the left ventricle, and an ejection fraction of 64 percent (Exhibit 4F/7). Imaging of [Long]'s chest revealed normal results (Exhibit 4F/10). In April 2016 Dr. Carolyn Connelly, M.D. reported that

6

[Long] tested positive for rheumatoid factor, "[but] no evidence of rheumatoid arthritis or other inflammatory arthritis currently (Exhibit 19F/2)." Imaging of [Long]'s bilateral knees, hips, and left hand from March 2016 was unremarkable (Exhibit 19F/6-9).

Lab results from August 2015 show [Long] with markedly elevated ferritin level of 4821 (Exhibit 19F/3). CT imaging of [Long]'s abdomen and pelvis from August 2017 revealed "heterogeneous appearance of the liver, can't exclude underlying lesions in this non-enhanced study..."; uncomplicated cholelithiasis; and "[f]at stranding noted in the mesenteric root and also in the periportal region, of unknown significance (Exhibits 18F/12; 25F/6). DNA mutation analysis from April 2014 revealed that [Long] tested positive for one copy of H63D mutation in the H7E gene, indicating hereditary hemochromatosis (Exhibit 25F/7). Magnetic resonance imaging of [Long]'s abdomen from April 2018 revealed diffuse nodular contour of the liver, findings suggestive of fatty infiltration of the liver, and findings suggestive of a small amount of perihepatic and perisplenic fluid (Exhibit 26F/2)." Dr. Ashok Kumar Dhaduvai, M.D., reported that these findings are suggestive of liver cirrhosis with hepatic steatosis (*Id.*).

[Long] was diagnosed with cholecystitis and underwent a cholecystectomy in August 2017 (Exhibit l 8F). On discharge, [Long] was instructed not to lift over 20 pounds for four weeks (*Id.*/4). Though this limitation was for a short period, I have considered this opinion in the [RFC.]

Treatment notes document that [Long] has been prescribed clonazepam, lactulose, levothyroxine, and Xifaxan (Exhibit 15F/3). [Long] testified to having diarrhea as a side effect of the lactulose, which requires him to be in close vicinity to a bathroom. In a statement dated August 10, 2017, [Long]'s primary care provider, Dr. Sage Naran, M.D., opined that [Long] should be excused from jury duty due to his medical conditions, indicating that his medications do not allow him to sit for extended periods of time without having to use the restroom (Exhibit 16F). I have considered Dr. Naran's statement and find [Long] limited to standing, walking, and sitting for up to 6 hours each in an eight hour workday with normal breaks.

Furthermore, the objective signs and findings on physical examination were not particularly adverse. For example, on August 14, 2015, Dr. Robert Betzu, M.D., documented that [Long] reported feeling weak, physical examination findings showed no muscle weakness, no back pain, and no arthralgias (Exhibit 4F/9). Pulmonary examination showed coughing sputum and wheezing, although his chest x-ray was normal (*Id.*/10). In April 2016, Dr. Connelly documented that [Long] had

7

> polyarticular joint pain and paresthesia of the hands and feet of questionable etiology (Exhibit 19F/2). On physical examination, she indicated that [Long] had a positive Tinel's sign on the right, normal grip strength, medial joint tenderness, and no active synovitis of peripheral joints (Exhibit 19F/2). [Long] had difficulty getting on and off the exam table, but was able to do so without assistance. His lower extremity motor strength was normal, though he had pain with passive motion of legs (*Id.*/3). However, [Long] reported improvement with taking four Aleve tablets a day and that he was "[]able to drive now (*Id.*)." Notably, records indicate that [Long] has a remote history of thyroid cancer with residual thyroid dysfunction. Dr. Connelly documented [Long]'s report that his primary care physician indicated that paresthesia of his hands and numbness of his feet are related to his thyroid dysfunction (*Id.*). In April 2017, treatment notes document [Long]'s report of continued left-sided weakness. However, [Long] reported that his strength was improving. He denied having facial weakness, visual symptoms, or slurred speech (Exhibit 21F/3). On physical examination, Shelby Devinney, P.A. documented [Long]'s left side muscle weakness, with left lower extremity strength of 3/5 and left upper extremity strength of 3/5. However, [Long] had normal tone, normal movement of all extremities, no tenderness, and no edema. She further reported that [Long]'s gait and stance was normal and his sensation was grossly intact (Exhibit 21F/4).
>
> In December 2017, Dr. Mazen Kattih, M.D., examined [Long] and documented that [Long] denied backaches, myalgia, joint stiffness, joint swelling, and muscle weakness (Exhibit 24F/3). On physical examination, Dr. Kattih documented that [Long]'s respirations were unlabored. He had equal air entry bilaterally with no wheezes or rhonchi, and his lungs were clear to auscultation and percussion (*Id.*). He had full range of motion in all extremities with no clubbing, cyanosis, or edema (*Id.*/4). [Long] had no tenderness to his abdomen, typical signs of chronic liver disease, ascites, or shifting dullness (*Id.*).
>
> Complicating [Long]'s impairments is his history of obesity. The medical evidence of record documents [Long]'s weight as ranging from 201 to 210 pounds on a 5'7" frame, which calculates to a body mass index (BMI) range of 31.5 to 32.9 (Exhibits 4F/3; 23F/4). … I have considered the potential impact of obesity in causing or contributing to co-existing impairments … . Even though [Long] has not alleged that his obesity affects his ability to ambulate, I have considered his obesity a severe impairment, and included it within the limitations of [Long]'s [RFC.]

Tr. 91–93 (alterations in quotations in ALJ's decision) (footnote omitted).

The ALJ stated:

8

> After careful consideration of the evidence, I find that [Long]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Long]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 93.

The ALJ gave "significant weight" Dr. Molis's February 2016 opinion that Long could perform a full range of light work. Tr. 93. The ALJ found the opinion consistent with the medical evidence, "including physical examination findings showing generally mild symptoms." Tr. 93. The ALJ found the post-hearing evidence showed no evidence of symptoms and limitations inconsistent with the opinion but gave "some weight" to Long's testimony and therefore found him "additionally limited" as reflected in the RFC. Tr. 93.

The ALJ gave "partial weight" to the plaintiff's November 2017 letter. Tr. 94. The ALJ explained, "[T]his third-party statement appears to be no more than a repeat of the subjective complaints already testified to and reported by [Long]. Therefore, I afford partial weight to this statement for the same reasons [Long]'s allegations are afforded partial weight." Tr. 94.

The ALJ found Long could not perform his past relevant work but could perform jobs existing in significant numbers in the national economy; specifically, the jobs of central supply clerk, unit clerk, and mail clerk. Tr. 94–96. Thus, the ALJ found Long not disabled. Tr. 96.

## II. Standard of Review

A court's review of a decision by the Acting Commissioner is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also* 42 U.S.C.

9

§ 1383(c)(3) (incorporating § 405(g)); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoted authority omitted). The "threshold for such evidentiary sufficiency is not high." *Id.* Under this standard of review, a court may not reweigh the evidence or substitute its judgment for that of the Acting Commissioner. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

A court "will not affirm simply because some rationale might have supported the ALJ's conclusion." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021) (quoted authority and internal quotation marks omitted). Unless the ALJ "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (quoted authority and internal quotation marks omitted).

### III. Arguments, Law, and Analysis

The plaintiff presents three arguments.

First, the plaintiff argues the ALJ erred by failing to properly develop the record. Doc. 30 at 15–18. Specifically, the plaintiff argues the ALJ erred by failing to obtain an opinion from an ME considering "the complicated nature of Long's medical conditions, the rare diagnosis of hemochromatosis, and the progressive nature of liver cirrhosis resulting in [Long's] death less than one year from" the ALJ's decision. Doc. 30 at 16. The plaintiff emphasizes the ALJ's plan to let "an independent ME decide where we are." Doc. 30 at 18 (quoting

10

Tr. 154); *see also* Tr. 147. The Acting Commissioner argues Long presented the ALJ with detailed medical records sufficient to decide the claims. Doc. 37 at 6.

A claimant has the burden of proving disability and the duty of submitting evidence known to the claimant relating to whether he is disabled. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). The evidence must show how his impairments affect his functioning during the time he says he is disabled, and upon request, he must provide any other information the Social Security Administration (SSA) needs to decide his claim. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). If a claimant fails to provide the "medical and other evidence" the SSA needs, the SSA will "make a decision based on information available[.]" 20 C.F.R. §§ 404.1516, 416.916.

Still, "[b]ecause a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record." *Cowart*, 662 F.2d at 735. "To determine whether remand is necessary, [a court] must decide 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted).

To develop the record, an ALJ "may ask for and consider the opinion of" an ME on whether a claimant's impairments could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). "MEs are physicians … and other medical professionals who provide impartial expert opinion at the hearing level[.]" Soc. Sec. Admin., *Hearings, Appeals, and Litigation Law Manual* (HALLEX) I-2-5-32, 1994 WL 637369 (2020). "MEs provide opinions by either testifying at a hearing or responding to written interrogatories." *Id.* An ALJ "may use an ME before, during, or after a hearing." *Id.*

11

"The need for ME opinion evidence is generally left to the ALJ's discretion[.]" *Id.* "The primary reason an ALJ will request an ME opinion is to help the ALJ evaluate the medical evidence in a case." *Id.* An ALJ may use an ME, for example, if the ALJ "[b]elieves an ME may be able to assist the ALJ by explaining and assessing the significance of clinical or laboratory findings in the record that are not clear" or to "ask the ME to offer an opinion about the claimant's functional limitations and abilities as established by the medical evidence of record." *Id.* I-2-5-34, 1994 WL 637370 (2020). "When needed, use of an ME will result in a more complete record to support the ALJ's conclusion on the ultimate issue of disability." *Id.* I-2-5-32, 1994 WL 637369. An ME is unnecessary if the record contains sufficient evidence for the ALJ to make an informed decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (addressing an argument that the ALJ erred in failing to order a consultative examination).

Second, the plaintiff argues the ALJ's RFC finding is not supported by substantial evidence. Doc. 30 at 18–21. Specifically, the plaintiff complains the ALJ failed to consider the common and actual side effects of the lactulose that Long had been taking three times daily to treat his liver: nausea, abdominal pain, and diarrhea requiring frequent trips to the restroom sometimes lasting two hours. Doc. 30 at 19. The plaintiff observes the ALJ acknowledged Dr. Naran's letter concerning jury duty but failed to explain how the RFC accounted for Long's need to be near a bathroom or why he rejected Dr. Naran's opinion and Long's testimony. Doc. 30 at 19–20. The Acting Commissioner responds that Long "failed to prove that his diarrhea caused greater limitations than that found by the ALJ." Doc. 37 at 15. The Acting Commissioner acknowledges Long complained about chronic diarrhea to his medical providers but emphasizes "he also admitted to driving," and contends this admission "suggests the frequency of his diarrhea is not as great as he

12

alleged." Doc. 37 at 15 (citing Tr. 1063). The Acting Commissioner acknowledges Long "complained of frequent, dark watery or loose stools throughout the day," but contends "he did not discuss those symptoms with a gastroenterologist he saw, which also suggests the severity of his diarrhea is not as great as alleged." Doc. 37 at 15 (citing Tr. 1065). The Acting Commissioner summarily adds that Long "reported to Dr. Kattih that he had some diarrhea based on eating." Doc. 37 at 15 (citing Tr. 1922).

A claimant's RFC is the most he can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The SSA uses the RFC at step four to decide if the claimant can perform any past relevant work and, if not, at step five with other factors to decide if other jobs he can perform exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(5).

Third, the plaintiff argues the ALJ erred by failing to properly consider Long's subjective complaints. Doc. 30 at 21–25. According to the plaintiff:

> The ALJ does not consider Mr. Long's allegations and diagnosis of chronic diarrhea. This symptom alone, had Mr. Long's allegations been credited, as they should have been, would have been determinative of disability. On March 31, 2016 Mr. Long told Dr. Connelly he was having frequent dark watery stools throughout the day for the past five to six months (Tr. 1065). At his next appointment Dr. Connelly reminded Mr. Long to tell Dr. Cardonna, a gastroenterologist he was going to see for another opinion, about his chronic diarrhea (Tr. 1063). Of particular importance was the time period around January 2017 when Mr. Long was jaundiced and complaining of chronic diarrhea, nausea and vomiting. The ALJ fails to consider that Mr. Long's liver cirrhosis was apparently so severe that Dr. Kattih and a gastroenterologist from Bay Area Gastroenterology opined that he needed to contact Tampa General to get on the liver transplant list (Tr. 1922).

Doc. 30 at 24–25. The Acting Commissioner disagrees, contending, "To grant the remedy Plaintiff seeks, the Court would have to credit his evidence despite contrary evidence in the record that undermined his claim." Doc. 37 at 15.

13

To determine disability, the SSA considers all symptoms and the extent to which the symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). Statements about symptoms alone cannot establish disability. *Id.* §§ 404.1529(a), 416.929(a). Objective medical evidence from an acceptable medical source must show a medical impairment that "could reasonably be expected to produce the" symptoms and, when considered with the other evidence, would lead to a finding of disability. *Id.* §§ 404.1529(a), (b); 416.929(a), (b).

The finding that an impairment could reasonably be expected to produce the symptoms does not involve a finding on the intensity, persistence, or functionally limiting effects of the symptoms. *Id.* §§ 404.1529(b), 416.929(b). For that finding, the SSA considers all available evidence, including medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. *Id.* §§ 404.1529(a), (c); 416.929(a), (c). The SSA then determines the extent to which the "alleged functional limitations and restrictions due to symptoms … can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how" the symptoms affect the ability to work. *Id.* §§ 404.1529(a), 416.929(a).

Factors relevant to symptoms include daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication to alleviate the pain; treatment for the pain other than medication; and measures used to relieve the pain. *Id.* §§ 404.1529(c)(3), 416.929(c)(3). To determine the extent to which symptoms affect a claimant's capacity to perform basic work activities, the SSA considers statements about the intensity, persistence, and limiting effects of the symptoms; the statements in relation to the objective

14

medical and other evidence; any inconsistencies in the evidence; and any conflicts between the statements and other evidence, including history, signs, laboratory findings, and statements by others. *Id.* §§ 404.1529(c)(4), 416.929(c)(4).

An ALJ must clearly articulate explicit and adequate reasons for rejecting a claimant's testimony about symptoms. *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). A court will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

In *McDevitt v. Commissioner of Social Security*, a case on which the plaintiff relies, Doc. 30 at 20, the ALJ stated the claimant had mentioned no concentration or memory difficulties when in fact the claimant had testified a medication caused an extreme lack of concentration, another medication caused sleepiness, and he was unsure if he could perform telemarketing duties because they require concentration. 241 F. App'x 615, 616–19 (11th Cir. 2007). The ALJ found the claimant's testimony was "somewhat exaggerated" but made no finding about his statements regarding the medication side effects. *Id.* at 619. The court observed, "We have stated that an ALJ has a duty to investigate the possible side effects of medications taken by a claimant." *Id.* (citing *Cowart*, 662 F.2d at 737). The court continued, "We have also stated that '[i]t is conceivable that the side effects of medication could render a claimant disabled or at least contribute to a disability.'" *Id.* (alteration in original) (quoting *Cowart*, 662 F.2d at 737). The court held the ALJ had failed to develop the record by failing to consider the claimant's testimony about the medication side effects and whether they prevented him from working as a telemarketer. *Id.*

Considering the administrative record, the arguments, and the law, reversal and remand are warranted. The ALJ himself found the record was inadequate for proper evaluation of the evidence. Although the ALJ equivocated on that point, he ultimately found an ME would be necessary once additional medical records were provided. At the same time, despite an evolving medical landscape, he expressly discouraged Long from obtaining opinions from his own doctors. The result was a record with opinions only of Dr. Molis based on evidence predating February 2016 and of Dr. Naran addressing only an inability to serve as a juror. Moreover, the ALJ appeared to accept Long's statements about diarrhea and need to frequently use the restroom caused by thrice daily doses of lactulose as well as Dr. Naran's related opinion, but the ALJ confusingly found the RFC addressed the need to frequently use the restroom merely by including a sitting, standing, and walking limitation. Whether because the ALJ failed to adequately develop the record resulting in an unfair evidentiary gap, or because the RFC is not supported by substantial evidence, or because the ALJ failed to properly consider Long's statements, reversal is warranted. The Acting Commissioner's arguments to the contrary, including post hoc rationale, are unpersuasive.

## IV.   Conclusion

The Court **reverses** the Acting Commissioner's decision under sentence four of 42 U.S.C. §§ 405(g) and 1383(c) (incorporating § 405(g)) and **remands** the case to the Acting Commissioner to adequately develop the record; reevaluate the RFC, including by reevaluating statements concerning the side effects of thrice daily dosages of lactulose; and to take any other appropriate action.

The Court **directs** the Clerk of Court to enter judgment for the plaintiff, James Long, and against the defendant, the Acting Commissioner of Social Security, and close the file.

**Ordered** in Jacksonville, Florida, on March 30, 2022.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*